And we welcome you. Thank you, Your Honors. Our first case is the United States of America v. Shakir. Ms. Unger. Good morning, Your Honors. May it please the Court, my name is Kristi Unger, and I represent the appellant, Naeem Shakir. With your permission, I'd like to reserve three minutes of my time for rebuttal. That request will be granted. Just try to keep your voice up. Oh, thank you. The primary issue in this case, of course, is whether the search incident to arrest exception applies to the search of the bag at Mr. Shakir's feet once he was handcuffed and secured by a police officer on each side. I would submit that United— I'm having a little trouble hearing you. Sorry. Try to speak directly into that microphone, and if you can just make it a little louder, everybody will be— Okay. That's a little high. Okay. I submit to you that United States v. Myers controls in this case. In both cases, both men were holding a bag when the police approached and placed the bag on the floor. Both were handcuffed and covered by armed police officers at the time of the search. In both cases, several minutes passed before the time of the search. And in Myers, I would point out the officer testified that he was not concerned about whether the defendant could access the zippered bag, but he was concerned about leaving a gun in a house with a small child. Similarly here, the officer testified not that he was concerned that Mr. Shakir could access the bag, but that a gun could not be left exposed to the public. How about the alternative position of the police, or that he had a Confederate, they think, or there's a reasonable suspicion he had a Confederate, and that for their own safety they had to search the bag to make sure a Confederate could not get a weapon? There's no question that Mr. Shakir had a friend in the lobby, and that friend, as Detective Smith testified, was secured at the same time as Mr. Shakir. There's nothing in the record that he had any concern about anyone else there in the lobby. But either of these gentlemen could have broken loose from the police in a physical fray and grabbed what was a weapon very close by. Well, we know that Mr. Shakir once handcuffed, and as you'll see in the record, he's a rather not tall but large man, and it required three handcuffs just to bring his arms to the handcuffs. He was certainly secured. The officer described him as fully secured before the search took place, and there's no mention in a record of any difficulty with the other officers who had placed the other man under arrest in the lobby. The officers did testify that they saw Mr. Shakir holding the bag. Yes, they did. He actually put the bag down about a foot away from himself before he was detained, correct? He did. He put it down when Detective Smith approached him, and at that point one handcuff was put on. Would there be any difference if he was still holding the bag? It would be difficult to imagine how he could still be holding the bag at that point while being handcuffed. I suppose if it was a bag attached to his body, maybe like a pack or something like that. That would obviously make a difference. It may make a difference. I think it's a different set of facts, and we'd have to look at that a little closer. All right. Absolutely. Let me ask you this, then. What were the police officers supposed to do with the bag? Well, I think the – Were they to ignore it? Not at all. I mean, they had a couple of choices there, and they could have taken the bag with them and secured a warrant, which would be the normal course of things to do. Or? Or arguably, Mr. Shakir was a regular guest at the casino hotel. If maybe given the option, he might have left it there with the desk. I understand he was there the night before and was registering to stay that night, maybe for someone to pick up. I mean, we really don't know. But wouldn't, since they obviously saw him with the bag, he put the bag down, it's right to assume it was his bag. They arrested him pursuant to a lawful arrest warrant. It would seem to me the appropriate thing for the police to do is to take the bag and inventory the bag. I think the question here is really not maybe what we would subjectively automatically think is reasonable, but really we have to look at this under the Kamel and Meyer standard, which was could he have accessed that bag at the time that it was searched. Yes, but didn't they have the right to inventory that bag? Well, there was an inventory search when they went back to the police station. We have two problems with that inventory search. We know, first, that there was no receipt prepared or an inventory log. It was referred to as both in the record. And also, Mr. Shakir wasn't present for that search. Yes, but these are technical violations. The police had more than a right to inventory the bag. They had a duty because this was property with him at the time, so they had a duty to have it. And if the inventory was not done exactly according to regulations, aren't the cases pretty clear that technical violations of the inventory will not nullify the inventory search? And don't we have an inevitable situation here where it would have been discovered one way or the other? I'm going to try to break that down into three pieces. First of all, as far as a technical violation, I would remember that the purpose of an inventory search, it's a narrow exception to the warrant requirement, and it's there to protect the police officers and protect the defendant, both from allegations of theft or temptation of theft, perhaps, and maybe even in this case where we know there's a whole lot of money, from allegations of planting evidence or planting bait bills. And I suggest to you that the two pieces that we're missing in this search, the presence of the defendant and a record of what was inventoried, were key to those policies. The fact that the inventory was not done according to regulations, police regulations, are mere technical, and they should be complied with, but they're technical, and that if inevitably, if it's done according to the technique, it would have been discovered that if there were, in fact, a violation of the Fourth Amendment, it's overcome by the discovery in any event. Well, if you look back, I mean, the inevitable discovery doctrine requires that it would have been inevitably discovered by lawful means. And in the cases of inventory searches, that means by routine procedures. I mean, the case law is clear that these searches must be conducted pursuant to routine procedures, or we get into a very cloudy debate about— No, the cases are clear that a technical violation of the inventory will not nullify a discovery of contraband. I mean, the cases are very clear on that. I apologize. I'm not exactly sure which case you're referring to, but I would respectfully disagree with the notion that that was a technical violation. I think those are key parts to an inventory search. Well, likewise, even if you technically disagree with Judge Cowen on that, you don't have any case that supports your position that minor violations of inventory rules require suppression, do you? Well, we actually—I mean, the Supreme Court case law is clear. I mean, the language is pretty common that inventory searches must be conducted pursuant to routine procedure. We did cite, I think, at least two cases in our brief, cases which—that would be United States v. Maple and United States v. Ramos Oseguera, where I think maybe the kind of violations that you're referring to were both found to invalidate an inventory search. I thought you were arguing that no search was done at all, not that the procedures were not followed, no inventory search. Well, it's clear from the record that the agent characterized this as an inventory search, and the district court found that it was an inventory search. We're not—my position is not that this was not an inventory search, but that in order for it to be a valid inventory search, it must be—it must follow routine procedures. That way we avoid the discussion about what the officer's intent was and whether they knew there was money in here and they were looking for evidence and looking for bait bills. United States v. Adams held that rejecting a Fourth Amendment challenge to an inventory search conducted by law enforcement agents in a parking lot when the search was in violation of the standard procedure to be done and was technically improper. I'd like to get—we could research the technical or substantial violation of the inventory. I'd like to get back to the position that you take, that this was an improper seizure of the gun in the first place. Yes. What do you have to say about the cases which instruct us that we should not second-guess police officers who, under trying conditions and trying not to get themselves shot, make split decisions and conduct searches of the immediate area and therefore search the bag here? And who are we as judges to second-guess what they did in the heat of the moment and search the bag because they're worried about someone grabbing that bag or resting themselves free from their constraints and having consequences on their safety? I think United States v. Myers speaks directly to that problem. And what we have here, like we had in Myers, is that temporal distinction between the moment of the arrest and the time of the bag. We know that up to five minutes passed, and we know that this was not a split-second decision in a chaotic circumstance. If we read the record, the officer describes this entire event as low-key and Mr. Shakir as extremely cooperative. At no time does he mention that he was concerned about him accessing the bag. I would mention that this entire time, while this time was going by, he left the bag just at Mr. Shakir's feet. He didn't pick it up or move it out of the way or ask a casino security officer to hold it. And I think what we're doing when we have this bit of time is we're not going back and second-guessing something that was made in an urgent situation. And I would ask the Court to compare the circumstance to a couple of the circuit cases, albeit not precedential, that the government relied on, United States v. NIGRO, which I know Your Honor authored. That describes a situation where the defendant was in his own home, on his home turf, in a place unfamiliar to the officers. He was known to be presently armed. He was found crouching in a dark backyard next to the bag. And the opinion describes the search as simultaneous to the handcuffing, and a gun was felt as the bag was picked up. The other case, United States v. Massenburg, describes a forced and chaotic entry into a home, the belief that another person armed was also in the house. And I think when you look at Myers and the case here and you compare these cases, there's a huge divide over what was going on with the police officer. But one of the things here was they had an arrest for an armed robbery. They had reason to believe that Shakir would be armed. They also had reason to believe that there may have been a weapon in that bag. If they were to take the bag, whether they opened the bag or not, if they were to take the bag, isn't it reasonable that since they thought there may have been, had reason to believe there may have been a weapon there, isn't it reasonable for them to have opened that bag to check to see whether there was a weapon? I mean, if the ammunition was in the chamber and the bag was mishandled, the gun could have gone off while the police were carrying it, somebody could have been injured. Isn't all of that reasonable? And isn't that what the Fourth Amendment talks about, reasonable searches and seizures? It does, absolutely. What the case law is very clear about, though, is what is reasonable to you or me is not the issue. We have to judge these circumstances under standardized criteria. But isn't that objectively reasonable that in a crowded place like the lobby of the Trump Plaza, they have reason to open up that bag? I mean, the fact that they find debate bills instead of a weapon really doesn't make a difference. The question is whether or not looking in that bag was appropriate at that time. Absent anything in this record, and I don't think that there is anything that we can point to that would give the officer reason to fear that sort of circumstance. We can look objectively at what he testified to and the way he described this arrest, and I think that's what we need to do is look at the totality of these circumstances. Myer's case allowed the sweep of a house after the defendant had been arrested and secured. And the rationale is that police are afraid for their own safety, of course, and the safety of others, and that there's no way of knowing that there's a companion lurking or available that could do them harm. And what is the difference between that? We're bound by Myer's. And the present case where they're dealing with a man they know is dangerous. They know he has at least one companion there, and they don't know who else is there. And he has a handbag right by his foot. So what is unreasonable for a police officer to make a split-second decision? He's not contemplating this over briefs and argument. He's doing this instantaneously and looking in the bag to make sure his safety is assured. What is unreasonable about that? If you were a police officer, what would be unreasonable about doing something like that? The reason that it's unreasonable in this case is because there was no way that Mr. Shakir, being held on each side, could have accessed that companion. And don't forget, he might have submitted and so forth, but you don't know these people sometimes can, you know, go 180 degrees the other way and arrest themselves away or a companion. What is unreasonable about a police officer being sure that nothing can occur beyond what you might, you know, the immediate situation is? Just to back up really quickly, as I said before, this was not a split-second decision. The bag remained at Mr. Shakir's feet during this entire period. When he did unzip the bag, he did not move it. He testified that he knelt down and unzipped it and looked through it. He was clearly not concerned that Mr. Shakir was going to access this bag. As I said, Mr. Shakir's friend was secured at that point, and there's nothing in this record to make us think that there was any concern about anyone else in this open-air lobby. Well, there's a lot of people in that lobby. They don't have the police know he has other companions. Myers deals with the situation of police not knowing whether there are Confederates or Associates in the area. That's why they allow a sweep of the house when you have the defendant secured. They don't know who else is in the house. What's the difference between that and this? Help me out on that because I'm pretty concerned. When you're talking about a residence, a defendant's house, you have a place that is familiar to the people in the house but completely unfamiliar to the police.  They really do not know what they're dealing with in that case. I think this makes Mr. Shakir's case even stronger because in Myers, this court still recognized that he could not have accessed that bag. You may have a different situation if the officers believed that there were other people lurking about who might access that bag. Detective Smith was quite clear in his testimony that he was not concerned with the crowd, that this was very low-key. It's simply not that split-second chaotic situation that we don't want to second-guess. All right. Ms. Nagle, we'll have you back. Thank you. Mr. Minney. Thank you, Your Honor. Good morning. May it please the Court, my name is Joseph Minney, Assistant United States Attorney, and I represent the Epley United States of America in this case. Your Honors, the ability to properly search the defendant's bag in this case did not simply end because the handcuffs went click on the defendant and he was locked and perhaps secured. While the Supreme Court's decision in Gantt certainly limits now the scope of search's incident to arrest, I submit to Your Honors that this case, that the search was properly within the geographic and temporal limitations set forth in Gantt and in Myers. What does the record reflect between the time that they clicked the handcuffs on the defendant and they searched the bag? Your Honor, if I may be so bold to say it was instantaneous. So what's instantaneous? Locked the handcuffs. The handcuffs were locked. Detective Smith then went down to his knee, went to the bag that was on the floor right next to Mr. Shakir's. What does that reflect in the appendix? Your Honor, I could submit that page number following this hearing, but I believe that's what the testimony was, is that it was almost instantaneous. All right. Thank you. But is it a temporal test or a wingspan test after Gantt? Gantt, Your Honor, deals with a geographic, a wingspan test. But if you look at Myers, which I think is still bonding on this court, Myers deals with a temporal test. So I think you have, and the court in Gantt did explain that there's still both a geographic and temporal limitations on such searches. And what we're saying in this case is that under both of those tests, it passes muster here. There was certainly a reasonable basis for Detective Smith to fear not for his own safety but for the safety of others. Detective Smith was dealing with an individual that was known, was wanted for armed bank robbery. He was known to be potentially armed and dangerous. The defendant here was a big, burly strapping fellow, and he had to wait for a period of five minutes for backup officers to arrive with additional handcuffs. During this time, Detective Smith would not have been concerned with that bag moving away. Detective Smith is worried about keeping Mr. Shakir secure for a period of five minutes or until those officers came. Once he's secure, then he could further secure the area by checking the bag. In that five minutes, there was a safety concern. And the fact that Mr. Shakir was not fully secured did not somehow change the pattern here or change the game plan. Secured the defendant. He's cuffed. Now you can search the bag that was right next to him. The fact that Mr. Shakir, the defendant, was cuffed shouldn't control. As Judge Fisher, as you wrote in NIGRO, we agree with the district court that an objective basis existed for the search of NIGRO's bag, which was located directly next to him when he was arrested. The officers had information that NIGRO was armed and he was hiding in a dark backyard. The bag was picked up at the same time NIGRO was being handcuffed and was open when he was handcuffed. The search was within both the temporal and geographic limitations necessary for a valid search engine to arrest, citing Myers. The search was proper, even though NIGRO was actually handcuffed when the bag was open, citing Abdul-Sabur. Therefore, we will affirm the district court's denial of NIGRO's motion to suppress the gun on this ground as well. And that's at pages 156 through 157 at NIGRO, Your Honors. This case is more like NIGRO than it is like Myers. Myers. Unfortunately, Myers is precedential and NIGRO is not. That's correct, Your Honor. But this case can be readily distinguished from Myers, and it shouldn't control here. And there is a reason why Myers is heavily relied upon, because it goes against the government. The court recognized in Myers that there couldn't have been a valid search engine to arrest because there wasn't a proper arrest of the defendant in that case. But the court also recognized in Myers that the safety concern of the arresting officer arose only after the defendant was cuffed and placed on the floor. That's when the police officer noticed the bag three feet away from Myers. Well, where's the testimony in this case that the officer had such a safety concern? Your opposing counsel argued that he testified to the contrary. Your Honor, I submit to this court, in reading the record in its entirety, looking at the objective basis that Detective Smith had, his safety concern stayed with him from the time that he came down to the lobby, turned the corner. Show me the record. Where in the record does it say that? It doesn't say that specifically in the record, Your Honor. You're drawing inferences. Yes, Your Honor. All right. Well, tell us what facts are of record and then draw the inference without just jumping to the inference. Detective Smith knew that the defendant was involved in at least one armed robbery. There was an arrest warrant. Based on this information, Detective Smith was made aware that the defendant was armed and potentially dangerous. As Detective Smith saw the defendant when he turned that corner in the lobby, he noticed the defendant was a very large man. Just as Detective Smith approached the defendant to identify himself, a warning came from an associate, a friend, who was not more than 15 feet away from Mr. Shakir. Was he secured at that time, the associate? No, Your Honor. He was not. Okay. In drawing a further inference, I know this was discussed earlier, is that who knows? I don't know if we can make those conclusions or make those inferences, but do we want to risk guessing whether or not he should have figured out if there was any other associates milling about in the lobby or had yet to come down to the lobby? These are these types of second guessing that perhaps we shouldn't be doing in these situations. This is how officers and perhaps innocent people in the public can get hurt or injured. But what we know is that Detective Smith had this concern when he approached Mr. Shakir. His first and he testified that his concern was for the safety of himself and for the public in general because they were in a hotel lobby. His first concern was to get Mr. Shakir secured. Once he got him secure, he did the next proper thing was that to open the bag, check for any weapons. And it's reflected in the record is that as soon as he found no weapons, he immediately zipped up the bag and they went up, they whisked Mr. Shakir off. Assuming arguendo, I know it's not your primary argument that we assume the purpose of what we rule against you on the on your primary argument that this was a proper search. Under the inevitable discovery rule, your colleague across the aisle says that it's not an inevitable discovery because the inventory of his property was not done according to police regulations. And therefore, technical things don't matter. And so what do you have to say? That's your backup position. I have a lot to say about that. As a matter of fact, I was prepared to argue that is that, as your honor correctly noted, the technical violations. Should not help. Destroy the search. These technical violations. No courts have held, at least I could find any reported cases saying that if you have a technical violation, such as not giving a property receipt. We're not doing a proper log entry. The paperwork is not going to kill an otherwise valid search. The cases cited by the appellant by Mr. Shakir all deal with. Inventory searches that actually exceeded the scope of a permissible search by that department or by the agency. Here, we only have two alleged violations. One was fair to have Mr. Shakir present when they were counting the money. And the second was the failure to give him a property receipt. Your honors, as to the first. Alleged technical violation. The record is clear and special agent fury testified that they were in the Atlantic City. Detective division, the Atlantic City Police Department, they were in a small conference room. Mr. Shakir was was being processed. I believe he said he was being processed at the time. It would not have been feasible to have him there. And the FBI, apparently he testified that the FBI regs allow some discretion. And I unfortunately didn't get a chance last night reading over some additional cases. But there should be some discretion allowed here in that type of situation. You just can't have a recently arrested defendant in a room with thousands of dollars of cash. It's just going to create a problem for the officer. Some degree of discretion should be allowed. As to the second alleged technical violation, the failure to give a property receipt. That's minor. That's a failure to just to give a piece of paper out. That should in no way result in any way nullifying an otherwise valid inventory search. It is clear that the inevitable discovery does apply here. When Detective Smith turned the defendant over to FBI Special Agent Fury. Detective Special Agent Fury's first words to the defendant was, introduced himself. He says, you know, you're coming with me and your bag's coming with me. There's no doubt in this case that the defendant was going and the bag was going. And pursuant to established FBI procedures, that bag was going to be needed to be inventoried. Should the exclusionary rule apply if there was a violation of the of an inventory search? No, Your Honor, not. I'm sorry. No, Your Honor, not in this instance. The courts that address this issue have spoken clearly in that the court should not freely apply the exclusionary rule for these types of violations. It should only be used, the exclusionary rule should only be used in instances where it needs to serve a purpose to deter police conduct or misconduct. In this case, it doesn't, it wouldn't serve a purpose. The exclusionary rule just doesn't serve anything here. So, you're saying that the police could be allowed to do inventory searches without keeping an adequate inventory of what was searched? Wouldn't that potentially increase the likelihood that people are tagged with evidence that was not in their possession? Or in the converse, wouldn't that be license for things that are in their possession or were in their possession that are valuable to be somehow lost? I think, Your Honor, when you're, excuse me, when you're dealing with a technical violation such as a missing piece of paperwork or a defendant not being present. All right, well, the receipt is an easier argument for you to make. I'm talking more about the keeping a valid inventory. I mean, forget about the handing over of the receipt for a minute. What about the keeping of a valid inventory? Isn't that a very important function, public function, that there is a deterrence aspect to that? There is some deterrent to it. And one of the deterrents is, and keep in mind that's the whole purpose behind an inventory search is to protect the public servants, the agencies from civil liability. My suggestion is, in that case, there's an exposure to civil liability. The property is missing. But the question is whether or not police officers, in conducting an otherwise valid search, miss something and should be punished by having evidence excluded. I think that's not serving the purpose of the exclusionary rule, and I think that goes against what the reported cases say. You want to deter misconduct, and I think missing a technical procedure in an inventory search does not serve a purpose under the exclusionary rule, and it should not be applied in that instance. Your Honor, I believe that I've come to the end of my argument. If there are any other questions that the Court has? Thank you, Mr. Minney. Thank you, Your Honor. We'll miss Unger on rebuttal. Thank you. I'll start with the questions on the inventory procedure, since those are freshest in our mind. What I want to point out is these procedures, having the defendant present, keeping an accurate record of the inventory, these are the only things we have that distinguish this search from an evidentiary search. And I suggest, for that reason, these are the very circumstances that the deterrence rationale applies. This is an exception to the warrant rule that should be narrowly construed, and there would be no purpose in having these procedures if they do not have to be followed in these cases. Quickly, I just want to mention, Mr. Minney talked about the presence of the defendant being discretionary, and what the officer testified to was that the procedures required the defendant be present if possible. And I suggest that he's attempting to interpret the word possible as discretionary or convenient. All we know is that Mr. Shakir was in a room at a small table. There was a bigger table apparently across the hall, and we have no explanation for why, although there were three officers present, he couldn't be brought over to the other room. I would suggest an example of not possible would be a defendant who's been shot or sent to the emergency room. But I don't think that we could interpret if possible to mean convenient. I recognize that this was the Atlantic City Police Station, and I just wanted to point out that the agent testified that he routinely uses this station. So this was not an unusual circumstance for him in any way. Mr. Denny related to us that after the defendant was arrested, that it was almost instantaneous that the bag was taken possession of and searched. What do you have to say in response? He testified that he waited a few minutes for the extra sets of handcuffs, which was the temporal delay that I was talking about in terms of his decision making. Once he said that Mr. Shakir was, and I quote, fully secured, he then knelt down and undid the bag. What's wrong with that? Obviously, he couldn't gather the bag until he had the man secured, even if he was submitting to the arrest. Is it Mr. Denny's position rather correct then? It was instantaneous after they had the man secured that they searched the bag. But even if it was instantaneous once the handcuffs were clicked, we know that Mr. Shakir could not have accessed that bag. I suggest he could have moved an inch. We're dealing with companions. The place has people there. They don't know. What's wrong? The theory of the government is that, number one, he could have arrested himself free. They know that he had at least one companion. They didn't know who else was there, and there were a lot of people present. What's wrong with the government's position that it's not unreasonable for an officer to say, look, I better see what we got here because there might be companions, and I'll take a look at this bag immediately after I secure the defendant? What's unreasonable about that? It would not be unreasonable if there was some basis in this record for that concern. There were people in the lobby, no question about it. There are. And his testimony was that he was concerned that the public be exposed to a firearm, not that Mr. Shakir or a confederate was going to access it. So he could have taken that bag. It did not need to be searched as a search incident to arrest. It simply just does not meet the Kamel or Myers standard at that point. We talked a little bit about Myers, and I just wanted to emphasize, I recognize that this was an armed robbery warrant, but Myers is, I would suggest, was an even weaker case. They knew that he was presently armed, and they were walking into a house with a report of a domestic disturbance, an extremely volatile situation. But still, the court recognized that if he could not access that bag, then that was not a valid search incident to arrest. All right. Thank you, Ms. Unger. Thank you very much. We thank both counsel for a job well done, and we'll take the matter under advisement.